# 25-2209-cv

## United States Court of Appeals

*for the*

## Second Circuit

DALILA YEEND, BOUNNAM PHIMASONE, ELVIN MINAYA RODRIGUEZ, LISA LAPOINTE, SHANTADEWIE RAHMEE,

*Plaintiffs-Appellees,*

– v. –

AKIMA GLOBAL SERVICES, LLC, AKA AGS,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK

# REPLY IN SUPPORT OF THE HUMAN TRAFFICKING LEGAL CENTER'S MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF IN SUPPORT OF PLAINTIFFS-APPELLEES

PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, New York 10019
(212) 858-1000

*Attorneys for Amicus Curiae*

COUNSEL PRESS (800) 4-APPEAL • (392215)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................. 2

I. HTLC's Proposed Amicus Brief Supplies the Court with Empirical Data and National Context Not Found in the Parties' Briefs .......................... 2

II. HTLC's Empirical Data and National Context Directly Inform the Rule 23 Issues on Appeal, Which Carry Significant Precedential Consequences for Cases Involving the TVPRA ............................................ 7

III. Conclusion ........................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Barrows v. Becerra*,
24 F.4th 116 (2d Cir. 2022) ....................10

*Elisa W. v. City of New York*,
82 F.4th 115 (2d Cir. 2023) ....................9

*Funbus Sys., Inc. v. Cal. Pub. Utilities Comm'n*,
801 F.2d 1120 (9th Cir. 1986) ....................1

*Kistler v. Stanley B&D, Inc.*,
2023 WL 1827734 (D. Conn. Jan. 25, 2023) ....................1

*Menocal v. GEO Grp., Inc.*,
882 F.3d 905 (10th Cir. 2018) ....................4

*Neonatology Associates, P.A. v. CIR*,
293 F.3d 128 (3d Cir. 2002) ....................1, 10

*Nestle USA, Inc. v. Doe*,
593 U.S. 628 (2021)....................4

*Neversink Gen. Store v. Mowi USA, LLC*,
No. 20 Civ. 9293 (PAE), 2021 WL 8269105 (S.D.N.Y. Feb. 9, 2021) ....................3

*Prairie Rivers Network v. Dynegy Midwest Generation*, LLC, 976 F.3d 761 (7th Cir. 2020) ....................3

*Pratt v. Indian River Central School Dist.*,
2010 WL 11681606 (N.D.N.Y. Dec. 6, 2010) ....................1

*Soos v. Cuomo*,
470 F. Supp. 3d 268 (N.D.N.Y. 2020)....................1

*Universal City Studios, Inc. v. Corley*,
273 F.3d 429 (2d Cir. 2001) ....................3

*Yeend v. Akima Glob. Servs., LLC*,
No. 1:20-CV-01281 (AMN/PJE), 2025 WL 959968 (N.D.N.Y. Mar. 31, 2025) ..........8, 9

Statutes and Other Authorities

Alexandra Levy, *Fact Sheet: Human Trafficking & Forced Labor in For-Profit Detention Facilities*, the Human Trafficking Legal Center (2018) ..........6

Federal Rules of Appellate Procedure,
Rule 29(b)(1) ..........10
Rule 29(b)(2) ..........1, 2
Rule 29(c)(3) ..........10

Federal Rules of Civil Procedure,
Rule 23 ..........*passim*
Rule 23(b)(2) ..........9, 10

United States Code,
Title 18, Section 1589(a)(4) ..........9

Proposed *Amicus Curiae* HTLC respectfully submits this Reply Memorandum of Law in further support of its Motion for Leave to File Amicus Brief (the "Motion," Dkt. 46).[1]

## INTRODUCTION

Federal Rule of Appellate Procedure 29(b)(2) sets forth a deliberately broad standard for amicus participation. Courts have long recognized that the desirability criterion is "open-ended" and that "a broad reading is prudent." *Neonatology Associates, P.A. v. CIR*, 293 F.3d 128, 132 (3d Cir. 2002). Amicus briefs serve a range of functions. They supply expertise not possessed by any party, highlight the broader implications of a potential holding, and furnish courts with data and context that might otherwise escape consideration. *See id.*; *see also Funbus Sys., Inc. v. Cal. Pub. Utilities Comm'n*, 801 F.2d 1120, 1125 (9th Cir. 1986) ("The classic role of amicus is to add detail and context on both law and facts"); *Soos v. Cuomo,* 470 F. Supp. 3d 268, 284 (N.D.N.Y. 2020) (leave should also be granted "when the amicus has an interest in some other case that may be affected by the decision in the present case" (citation omitted)).

Contrary to the position taken by Defendant-Appellant AGS, courts in this circuit recognize that "amici need not be completely disinterested in the outcome of

[1] Capitalized terms not defined herein have their meaning as in the Motion. Defendant-Appellant AGS's Opposition to the Motion (Dkt. 55) is referenced herein as the "Opposition" or "Opp."

the litigation" so long as they provide perspectives "beyond the help that the lawyers for the parties" provided. *See Kistler v. Stanley B&D, Inc.*, 2023 WL 1827734, at *1 (D. Conn. Jan. 25, 2023); *Pratt v. Indian River Central School Dist.*, 2010 WL 11681606, at *4 (N.D.N.Y. Dec. 6, 2010) (holding "the fact that" an amicus brief is "argumentative, and acts like a surreply, does not prohibit the Court from considering the brief").

HTLC's proposed amicus brief easily satisfies the standard courts have applied under Rule 29(b)(2), and Defendants' objections to that brief are without merit. *First*, as a recognized leader in the anti-trafficking movement, HTLC brings its "particular expertise" in the enforcement of forced labor laws to bear in providing new information on key issues in the case that the parties did not themselves raise in their briefs. *Second*, the disposition of this case could have broad precedential impact on Rule 23 certification in TVPRA cases, including in other litigation in which HTLC has an interest. For these reasons, as described below, HTLC respectfully requests that the Court grant the Motion.

## ARGUMENT

### I. HTLC's Proposed Amicus Brief Supplies the Court with Empirical Data and National Context Not Found in the Parties' Briefs

AGS opposes HTLC's Motion on the ground that the proposed amicus brief "offers no unique information or perspective on the issue before this Court that has not or could not have been raised by Plaintiffs-Appellees themselves." Opp. at 1.

That objection rests on a flawed premise. It treats any overlap with the parties' arguments as disqualifying, when the governing standard asks a different question: whether the amicus contributes additional perspectives, data, or analysis that assist the Court on issues already before it.

There is an important distinction, which AGS fails to acknowledge, between introducing new issues – which amici may not do – and offering new information and arguments concerning issues on appeal – which amici may do and, in fact, is encouraged. An amicus brief is supposed to offer "ideas, arguments, theories, insights, facts or data that are not to be found in the parties' briefs" on the issues already before the Court. *Neversink Gen. Store v. Mowi USA, LLC*, No. 20 Civ. 9293 (PAE), 2021 WL 8269105, at *1 (S.D.N.Y. Feb. 9, 2021) (citation omitted). Courts can and do consider arguments and materials presented by amici that extend beyond the parties' submissions, including broader contextual considerations. *See Prairie Rivers Network v. Dynegy Midwest Generation*, LLC, 976 F.3d 761, 763 (7th Cir. 2020) (holding that amicus briefs may add "something different, new, and important," including regulatory context and empirical data not found in the parties' briefs). The Second Circuit has similarly recognized that, while an amicus brief "is not a method for injecting new issues into an appeal," the views of amici "can be helpful in elaborating issues properly presented by the parties." *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 445 (2d Cir. 2001).

AGS's claim that HTLC "presents no specialized perspective that could assist the Court" (Opp. at 6) is mistaken. First, HTLC is uniquely positioned as a leader in the anti-trafficking movement to supply this Court with empirical data and institutional context that neither party has furnished. HTLC has repeatedly served as amicus in cases raising issues at the intersection of human trafficking law, forced labor, and civil enforcement, including in cases involving class certification in the detention-facility context. For example, in *Menocal v. GEO Grp., Inc.*, 882 F.3d 905 (10th Cir. 2018), HTLC filed an amicus brief supporting class certification of forced labor claims brought by civil immigration detainees. And in *Nestle USA, Inc. v. Doe*, 593 U.S. 628 (2021), HTLC represented 21 members of Congress as amici curiae before the Supreme Court, providing legislative history and policy context underlying the TVPRA's civil enforcement provisions, which the Court cited in its opinion. In total, HTLC has filed 20 amicus briefs in federal courts nationwide, including three before this Court. Not one has drawn opposition from any party, and all have been accepted with the exception of one brief which was rendered moot by intervening circumstances.

HTLC's specialized expertise is further reflected in its repeated engagement with Congress on these issues. HTLC's president and staff have testified repeatedly before Congress on the civil enforcement of federal trafficking and forced labor laws, including before the Senate Finance Committee, the Senate Judiciary Committee,

the House Foreign Affairs Committee's Subcommittee on Global Health, Global Human Rights, and International Organizations, the House Ways and Means Subcommittee on Trade, and the Forced Labor Enforcement Task Force.[2] Members of Congress have acknowledged on the record their reliance on HTLC's expertise in these proceedings.

In both prior amicus briefs and congressional testimony, HTLC has drawn on the same data presented in its proposed brief. This data comes from HTLC's comprehensive database of every federal civil case filed since 2003 under the TVPRA's civil remedy provision, covering both forced labor and sex trafficking matters across all 94 U.S. federal judicial districts. HTLC's attorneys compile this data from publicly available federal court records stored on PACER and update it regularly. The organization's attorneys devote hundreds of hours and significant financial resources each year to collecting new cases, correcting and updating the data set, and assessing outcomes and trends. As far as HTLC is aware, no comparable resource exists. From that database, HTLC provides the Court with specific,

[2] *See, e.g.*, *Fighting Forced Labor: Closing Loopholes and Improving Customs Enforcement to Mandate Clean Supply Chains and Protect Workers: Hearing Before the S. Comm. on Finance* (2021) (statement of Martina E. Vandenberg, President, The Human Trafficking Legal Center); *Lost and Exploited: Confronting Child Trafficking and the Failure to Protect America's Most Vulnerable: Hearing Before the Subcomm. on Crime & Counterterrorism of the S. Comm. on the Judiciary* (2026) (statement of Evelyn Chumbow, Advocacy and Survivor Leadership Director, The Human Trafficking Legal Center).

quantified data illustrating the use of class actions to support civil actions under the TVPRA. This empirical evidence of litigation trends and outcomes contextualizes the Rule 23 question before the Court.

AGS's claim that the data provided represents "unverified statistics" (Opp. at 2) lacks merit.[3] Since 2018, HTLC has translated its raw data into public annual reports with aggregated information on cases and litigation trends, each subject to thorough verification. These reports are available on HTLC's website for the Court's review. The database is built from public federal court records, and HTLC's reports reflect careful methodology. That HTLC, rather than a party, compiled the data underscores its value as institutional knowledge unavailable to the litigants. HTLC has also published a dedicated report on the subject matter of this very appeal. *See* Alexandra Levy, *Fact Sheet: Human Trafficking & Forced Labor in For-Profit Detention Facilities*, the Human Trafficking Legal Center (2018).

Finally, HTLC provides the Court with a national perspective on the systemic nature of forced labor in detention facilities, drawing on scholarship, government data, and international reporting. This includes data from the ACLU and the University of Chicago documenting that 800,000 incarcerated individuals work in

[3] Similarly, AGS's implied suggestion that government contractors cannot engage in human trafficking because they are government sponsored actors rather than millionaires facing criminal charges for child sex trafficking (Opp. at 2 n.1), reflects a misunderstanding of the TVPRA and forced labor more broadly. That issue, however, is not before the Court, and HTLC does not address it further here.

the United States, with more than 76 percent reporting that they are required to work; a 2024 report by the United Nations Special Rapporteur on Contemporary Forms of Slavery documenting exploitation in carceral settings globally; and scholarship by Professor Annie Smith on the under-prosecution of labor trafficking. These are documented facts that illuminate the broader context in which this appeal arises. Contrary to the assertion that these data are "irrelevant," (Opp. at 8), this type of empirical and contextual information is precisely the kind of material amicus briefs are suited and intended to provide. *Cf. Neonatology Associates,* 293 F.3d at 132.

## II. HTLC's Empirical Data and National Context Directly Inform the Rule 23 Issues on Appeal, Which Carry Significant Precedential Consequences for Cases Involving the TVPRA

AGS attempts to narrow the scope of the appeal to a fact-bound inquiry, specifically, framing it as whether "these Plaintiffs met the requisite standard for class certification in light of their widely differing testimony." Opp. at 8. But this Court's resolution of the Rule 23 questions presented will necessarily establish precedent extending beyond the facts of this case. It is the precedential potential of the appeal that underlines HTLC's particular interest as an advocate for trafficking survivors' access to the civil remedy under the TVPRA.

The central question on appeal – whether the District Court properly certified a class of civil detainees alleging a structured scheme of forced labor under the TVPRA – requires this Court to determine how Rule 23's requirements apply to

claims arising from institutional labor practices. The District Court already found "sufficiently generalized proof" of consistent coercion and held that the common question of whether a reasonable person would have felt compelled to work "predominates over any proposed class member's individual experience." *Yeend v. Akima Glob. Servs., LLC*, No. 1:20-CV-01281 (AMN/PJE), 2025 WL 959968, at *15 (N.D.N.Y. Mar. 31, 2025). This Court's ruling will have direct implications for the viability of collective enforcement of the TVPRA, a statute that Congress has repeatedly expanded over more than two decades precisely to ensure broad remedial coverage.

HTLC's data speaks directly to this precedential concern. By documenting the trajectory of TVPRA class actions, including the increasing frequency with which survivors seek class certification, the high rate at which courts have granted it, and the critical enforcement gap between criminal prosecution and civil enforcement, HTLC provides the Court with the empirical foundation necessary to assess the real-world consequences of the legal rule AGS proposes.

AGS's position, if adopted, would require individualized proof of coercion at the certification stage, effectively demanding person-by-person mini-trials in every institutional forced labor case. AGS itself insists that the factfinder must "ask and answer a multitude of fact-specific, individualized questions" for each class member, including whether each detainee was deprived of a basic necessity, segregated,

criminally prosecuted, deported, or deprived of privileges, and concluding that "whether the suspension of these privileges put pressure on individual VWP participants to work is an inherently individualized inquiry." (AGS Br. at 16). The District Court already rejected precisely this approach.

The District Court further recognized that the absence of a written policy does not defeat certification where plaintiffs allege a "consistent practice" of coercion under Section 1589(a)(4)'s broad "scheme, plan or pattern" language, particularly given that class members are "geographically dispersed" and "likely do not have the resources to litigate their own claims." *Yeend,* 2025 WL 959968, at *13, *17. HTLC's data underscores the stakes of this choice: courts across multiple circuits have consistently found these cases suitable for class treatment. Adopting AGS's rule would place that established framework at serious risk.

This is not, as AGS suggests, an irrelevant "policy argument." Opp. at 8. It is directly relevant to the Rule 23 analysis. This Court has held that where plaintiffs challenge centralized policies or entrenched practices that expose all class members to a common risk of harm, commonality may be satisfied even if the precise manner or degree of harm varies across individuals. *See Elisa W. v. City of New York*, 82 F.4th 115 (2d Cir. 2023). Similarly, this Court has confirmed that Rule 23(b)(2) does not require "that the relief to each member of the class be identical, only that it be beneficial," and that certification under Rule 23(b)(2) is appropriate where a lawsuit

"is predicated on 'acts and omissions' of the defendant "that apply generally to the class." *Barrows v. Becerra*, 24 F.4th 116, 132 (2d Cir. 2022) (citation omitted). HTLC's brief reinforces these principles by showing that the District Court's certification order is consistent with Rule 23 as applied by this Court and other circuits, and that AGS's proposed rule would represent a departure from established precedent with far-reaching consequences for trafficking survivors and civil rights enforcement more broadly.

AGS also argues that permitting HTLC's brief would be "unduly prejudicial" because it would give Plaintiffs-Appellees additional pages of argument. Opp. at 9–10. This position, if accepted, would preclude the filing of *any* amicus brief in *any* case in which one party objects. That is not the law. Amici need not be "impartial." *Neonatology Associates,* 293 F.3d at 131 ("[A]s noted, Rule 29 requires that an amicus have an 'interest' in the case, *see* Fed. R. App. Proc. 29(b)(1) and (c)(3), and the appellants' argument that an amicus must be 'impartial' is difficult to square with this requirement."). The purpose of an amicus brief is to assist the Court, and the Court is fully capable of evaluating the proper weight to be given to an amicus submission in any particular case. Moreover, the fact that an amicus brief supports one party's position does not render it an impermissible "pile-on." *Id.* ("The argument that an amicus cannot be a person who has 'a pecuniary interest in the outcome' also flies in the face of current appellate practice"). What is relevant is

whether the brief provides the Court with information and perspective it would not otherwise have. HTLC's proposed brief does precisely that.

## III. Conclusion

For the reasons set forth above and further detailed in its Motion, the Human Trafficking Legal Center respectfully requests that the Court grant its Motion and permit HTLC to file its proposed amicus curiae brief.

Dated: April 15, 2026

By: */s/ Brian L. Beckerman*
Brian L. Beckerman
Julian M. Beach
Samantha Franks
Erin Kwiatkowski

*Counsel for Amicus Curiae*
*The Human Trafficking Legal Center*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME

This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(1) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 2488 words.

This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: April 15, 2026

By: */s/ Brian L. Beckerman*
Brian L. Beckerman
Julian M. Beach
Samantha Franks
Erin Kwiatkowski

*Counsel for Amicus Curiae*
*The Human Trafficking Legal Center*